SCHOENFELD & SONS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Before CARMAN, *Judge.*

Court No. 73–4–00898

(Decided May 7, 1985)

*Freeman, Wasserman & Schneider* (*Louis Schneider, Angela P. Violin* and *Patrick C. Reed* at the trial and on the briefs) for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division (*Judith M. Barzilay* at the trial and on the briefs) for the defendant.

CARMAN, *Judge:* The plaintiff has protested the classification of its imported merchandise as "Vegetables, dried, desiccated or dehydrated * * * Other," under item 140.55 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9. The parties agree that the merchandise is dehydrated green bell pepper, flaked or in pieces. Plaintiff contends, nevertheless, that the product is correctly classified under the spice provisions of the TSUS. Plaintiff claims the merchandise should be classified under item 161.71 as "Paprika, ground or not ground," or, alternatively, under item 161.83 as "Pepper * * * capsicum or cayenne or red * * * Other," or, in the second alternative, under item 162.15 as "Mixed spices, and spices * * * not specially provided for."

The crux of plaintiff's argument for all three claimed classifications centers on the standards for spices outlined in headnote 1 of Schedule 1, Part 11, subpart B, TSUS:

SUBPART B.—SPICES AND SPICE SEEDS

*Subpart B headnotes:*

1. The articles described in this subpart embrace only such herbs, leaves, flowers, barks, roots, seeds, or other parts of plants which have practically no food value, and are suited and capable of being directly used, either whole, divided or ground, for culinary purposes as a seasoning or garnishment.

The plaintiff argues that all articles which satisfy the three criteria of the headnote (i.e., that the articles (1) are parts of plants, (2) have practically no food value, and (3) are capable for use as a garnishment) should be classified under the spice provisions. Defen-

dant contends that plaintiff's product, dehydrated bell pepper pieces, contains nutrition and therefore does not satisfy the requirement of having practically no food value. Defendant contends further that the headnote is exclusionary, with the spices subpart limited to include only those substances which meet the criteria, rather than that the subpart extends to include all substances which meet the criteria.

## DISCUSSION

The terminology of headnote 1 indicates that only such parts of plants which have practically no food value and are capable of being used as a seasoning or garnishment are embraced by the subpart "Spices and Spice Seeds." All items meeting these criteria are not necessarily spices for customs purposes. A controlling factor in determining whether a product falls under the vegetable provisions (Schedule 1, part 8, subpart B, TSUS), and not the spice provisions, is the consonance of the qualities and uses of the dehydrated product with those of the product in its fresh form, which is admittedly a vegetable. *See United States* v. *Schoenfeld & Sons, Inc.,* 44 CCPA 179, 182 (1957).

In *Schoenfeld,* the court considered the classification of onion and garlic powders. While recognizing that the terms "vegetable" and "spice" overlap, the court found that a vegetable may continue to be a vegetable for customs classification purposes even though it is "extensively used to flavor or give relish to food" or is "often used as a garnish." *Id.* at 181. The court found that the uses of garlic and onion in powdered form are not so different from their uses as fresh vegetables "to justify a holding that the powders are not vegetables." *Id.* at 182.

In the case now before the Court, plaintiff has similarly not shown that the uses of the dried green pepper pieces vary significantly from the uses of fresh green pepper to warrant classification of the dried green peppers as spices. There is a presumption that a vegetable continues to be classifiable as a vegetable after dehydration. *See id.* at 182. The language of item 140.55 for dried vegetables clearly describes the subject merchandise, which in its fresh form would be classified under item 137.10 as "Vegetables, fresh, chilled, or frozen * * * Peppers." Plaintiff has thus not met its ultimate burden of overcoming the presumption that the government's classification is correct. *See Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 876, *reh'g denied,* 739 F.2d 873 (Fed. Cir. 1984); 28 U.S.C. § 2639(a)(1) (1982).

The evidence introduced at trial supports the Court's determination that dehydrated green bell pepper pieces are used for similar culinary purposes as fresh bell peppers. While ample evidence demonstrates that dried green bell pepper is often used as a garnishment, fresh green pepper may also be suitable for such use. Witnesses for plaintiff testified that dried green pepper is used for color in salads, potato salad, salad dressings, stews, goulash and

chicken with rice, Record at 19, and that dried green pepper is a substitute for fresh green pepper in such recipes as spaghetti sauce, meat loaf and pepper steak, Record at 118–19. Plaintiff's exhibit 13 states that the use of sweet pepper flakes is "[a] convenient way of adding green or red pepper flavor to sauces, salads, vegetables, casseroles, when a fine diced pepper is called for." National Restaurant Ass'n & American Spice Trade Ass'n, *A Guide to Spices* 10 (Tech. Bull. 190, 2d revision). Particularly detrimental to plaintiff's case is the label attached to plaintiff's exhibit 3, a jar of Spice Islands brand sweet bell peppers, which indicates that the dehydrated product is a substitute for fresh green peppers. Stated on the label is the following:

> Spice Islands Sweet Bell Peppers is a dehydrated product which gives you the color and flavor of fresh green peppers. This product is ready to use in an instant and is especially convenient when a small amount of diced bell pepper is needed. In recipes with plenty of liquid, use this product right from the jar. For other dishes, rehydrate in cold water before adding to your recipe.

Although testimony was offered that dried green peppers and fresh peppers are not interchangeable in all recipes, Record at 119, it appears to the Court that dried peppers are used for the same general purposes as fresh peppers. Certainly dried peppers are a practical substitute for fresh peppers in certain preparations (e.g. soup mixes, Record at 147–48), but that does not alter the essential qualities of the product as a vegetable.

Much of the evidence introduced at trial focused on the nutritional value of dried green pepper flakes. The evidence suggests that the dried flakes contain little nutritional value in comparison with the nutritional value of fresh vegetables. Regardless of whether this translates into "practically no food value" within the meaning of headnote 1, satisfaction of this criterion is not enough to transpose the vegetable into a spice. Various means of processing vegetables result in loss of nutrition. Record at 119–20; Plaintiff's Exhibits 16, 17 and 18 (photocopies of portions of various reference works and articles on the nutritional value of processed food). The Court has not been presented with information which demonstrates that the loss of nutritional value of the bell pepper as a result of dehydration is substantially different from the reduction in nutritional value which would occur with the flaking and dehydration of any vegetable. Drying and flaking or powdering generally does not transpose the identity of a vegetable. *See Schoenfeld*, 44 CCPA at 182. Several dried vegetables, including garlic and onion, have been specifically provided for under the dried vegetable provisions of the TSUS. *E.g.*, Item 140.30, Garlic and Item 140.40, Onions, TSUS. Dried green bell pepper flakes likewise retain the taste qualities and uses of fresh green peppers and are therefore properly classifiable under item 140.55, TSUS, as other dried vegetables.

Consideration of plaintiff's claimed classifications reinforces that the correct classification of dried bell pepper pieces is as dried vegetables. Regarding the claimed classification under item 161, TSUS, as paprika, ground or not ground, plaintiff presented evidence that the term "paprika" as used in the spice trade refers to any form of dried sweet peppers. On the basis of this evidence, plaintiff went on to argue that dried bell peppers should therefore be classified as paprika.

Although paprika may be a generic term referring to wide variety of capsicum peppers in Hungary or Europe, the Court is persuaded that the term has a more limited application in the spice trade of the United States. The evidence establishes that paprika is from red peppers which are selectively bred for their red color. Defendant's Exhibit C at 4. Paprika is used almost exclusively in ground form, although the TSUS also provides for paprika not ground. Item 161.71, TSUS. *Hortus Third, A Concise Dictionary of Plants Cultivated in the United States and Canada* (3d ed. 1976) indicates that the source of paprika is from the longum group of the annum variety of the genus capsicum. The bell pepper is from the grossum group of the annum variety. *Id.* at 219. All of the exhibits support the determination that paprika is notable for its brilliant red color and is most usually ground into a fine powder.

TSUS item 161.83, "capsicum or cayenne or red" pepper, does not describe plaintiff's merchandise. This provision clearly refers to red capsicum pepper of a hot or pungent variety.[1] Although capsicum is the genus which includes green bell pepper, the testimony at the trial indicated that the term "capsicum" as used in the spice trade refers to pungent red peppers. Record at 137–38. Absent evidence of contrary legislative intent, terms employed in the TSUS are to be construed according to their common or commercial meaning rather than in their scientific sense. *United States* v. *Sandoz Chemical Works, Inc.,* 46 CCPA 115, 118 (1959).

The *Summaries of Tariff Information* (1948), while not necessarily indicative of legislative intent, 2 R. Sturm, *Customs Law & Administration* § 52.2, at 12–14 (3d ed. 1984), supports the factual determination that "capsicum pepper" denotes a pungent red pepper:

> Capsicum or red (cayenne) pepper (known also as chilli or chillies) is the fruit of the pungent species of *Capsicum*. (It is not to be confused with the sweet peppers, which are utilized principally as a green vegetable for salads or as "pimientos" for canning.)

*Summaries of Tariff Information* 187 (1948). The *Summaries of Trade and Tariff Information* (1969) shows that the administrative

[1] Plaintiff states that its dried bell pepper flakes are not materially different from the peppers in *Pasquale Russo, Strohmeyer & Arpe Co.,* 22 CCPA 125 (1934), which the court held had been properly classified under the provisions for capsicum or red pepper or cayenne, Tariff Act of 1930, par. 781, 46 Stat. 638 (repealed 1963). The description of those peppers—about 1 inch in diameter, dark red, and having a pungent or peppery taste—does not apply to plaintiff's merchandise. *See id.* at 126.

view excluding bell peppers from the appellation "capsicum" has remained consistent and survived repeated enactments of the tariff provisions:

> Capsicum, cayenne, or red pepper is the dried fruit of the pungent varieties of the plant genus *Capsicum,* family Solanaceae. The fruit are used principally in the dried and ground form as a seasoning for foods * * * . In the green or immature state such peppers (which are classifiable in item 137.10) are sometimes consumed fresh * * * . Other capsicum peppers not included in this summary are (1) sweet garden or bell peppers (item 137.10) * * *.

*Id.* at 191. Plaintiff has not demonstrated to the Court that Congress intended otherwise than the foregoing when adopting item 161.83 as the provision for capsicum or cayenne or red pepper.

Plaintiff's argument that the imported merchandise should have been classified under item 162.15, TSUS, as spices not specially provided for, is also controvertible. As discussed previously in the opinion, a substance should not automatically be classified as a spice merely because it meets the criteria enunciated at headnote 1. Additionally, defendant made the showing that the green pepper pieces contain some nutritional value: protein, fat, minerals and carbohydrates, Record at 164. This alone may mean that the dried green pepper has food value. But as other factors may also contribute to food value, *see, e.g., American Health Products Co.* v. *Hayes,* 574 F.Supp. 1498, 1508–09 (S.D.N.Y. 1983) (suggesting food value is broader than nutritional value and contains elements of taste, aroma, nutrition and sustenance), *aff'd per curiam,* 744 F.2d 912 (2d Cir. 1984), the Court is not convinced that the dried green pepper flakes have practically no food value.

### CONCLUSION

The Court finds that the culinary application of plaintiff's merchandise, dried green bell pepper flakes, is similar to that of fresh diced green bell pepper. The essential qualities and function of the product as a vegetable are not substantially changed. Even though often used as a garnishment, the product is properly classified as a dried vegetable. Defendant's classification of plaintiff's merchandise under item 140.55 of the TSUS is correct and is accordingly upheld.